UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

FILED

Feb 05 2025

ARTHUR JOHNSTON, CLERK

By: _____ Deputy Clerk

## IN THE SUPREME COURT OF MISSISSIPPI

### (BEFORE A COMPLAINT TRIBUNAL)

**THE MISSISSIPPI BAR**                                                    **COMPLAINANT**

**FILED**

**v.**                                                   **CAUSE NO.: 2024-B-00203**

JAN 27 2025

**WILLIAM CLAY CALDWELL**                                    **RESPONDENT**

OFFICE OF THE CLERK
SUPREME COURT
COURT OF APPEALS
**ORDER**

**THIS CAUSE** came on for hearing at the Supreme Court Building in Jackson, Mississippi,

before the Complaint Tribunal on December 5, 2024, on the Mississippi Bar's (hereinafter "the

Bar") Formal Complaint against William Clay Caldwell (hereinafter "Mr. Caldwell"). The Bar was

represented by Attorney Kathryn Littrell and Mr. Caldwell appeared *pro se*. The Tribunal,

having heard testimony and received exhibits and arguments of the parties, makes the

following findings.

### History

During January 2022, Judge Patricia Koch, who presides in the Ninth Judicial District

Court, Parish of Rapides, Louisiana, sent a letter to the Mississippi Bar alleging that Mr. Caldwell

violated the Mississippi Rules of Professional Conduct, including conduct that exhibited

disturbing, delusional, deviant, and possibly criminal behavior. As a result of Judge Koch's

correspondence, Adam B. Kilgore, in his capacity as General Counsel of the Mississippi Bar, filed

an informal complaint against Mr. Caldwell alleging, upon information and belief, that Mr.

Caldwell had engaged in conduct that reflected adversely on his honesty, trustworthiness or

fitness as a lawyer in other respects. Thereafter, on February 16, 2024, the Bar, again acting

1

through Mr. Kilgore, filed the Formal Complaint that is the subject of this cause in accordance with Rule 7(b)(iii) of the Rules of Discipline for the Mississippi State Bar.

In the Formal Complaint, the Bar alleges several instances of what it believes to be inappropriate conduct by Mr. Caldwell, including assertions that he had made multiple inappropriate, romantic advances towards a female despite directives from the female's father to cease such conduct, trespassed upon a college campus, filed a frivolous motion with the United States District Court for the Western District of Louisiana, engaged in the unlawful practice of law and failed to respond to the Mississippi Bar Complaint. The alleged conduct all occurred in the State of Louisiana, where Mr. Caldwell is not licensed to practice law. The Bar asserts that Mr. Caldwell's alleged actions violated Rules 3.1, 5.5, 8.1, and 8.4 of the Mississippi Rules of Professional Conduct.

## Jurisdiction

This Tribunal was appointed to hear this matter by an Order of the Mississippi Supreme Court dated March 7, 2024. The Tribunal has jurisdiction over the parties and subject matter herein pursuant to the Rules of Discipline for the Mississippi State Bar. It is uncontested that Mr. Caldwell was admitted to practice law in Mississippi and was an active member in good standing and subject to the disciplinary jurisdiction of the Mississippi Bar and the Supreme Court of Mississippi at all relevant times of this action.

## Analysis of Claimed Violations

1.    Rule 3.1 of the Mississippi Rules of Professional Conduct

The Bar alleges that Mr. Caldwell violated Rule 3.1 of the Mississippi Rules of Professional Conduct by filing a frivolous motion for a temporary restraining order in the United

States District Court for the Western District of Louisiana. That Louisiana federal action began during 2012, when Mr. Caldwell, his father, and his wife[1] filed a lawsuit asserting claims of defamation against the United States Government, several news channels, Oprah Winfrey, and others. Within a few months, the plaintiffs voluntarily dismissed that action without process having been served upon the defendants.

On November 9, 2021, approximately nine (9) years after the Louisiana federal case had been dismissed, Mr. Caldwell filed a Motion for Temporary Restraining Order in that same cause. This Motion for Temporary Restraining Order was handwritten and attempted to add a number of new defendants to the case, including his spouse, Balbina Caldwell, who Mr. Caldwell alleged had attempted to kill him with a knife. Mr. Caldwell also attempted to add as defendants Rapides Parish, Louisiana; Louisiana College; the Pineville Police Department; New Life Apostolic Church in Ball, Louisiana; Pastor Darian Hosh; Dustin Benoit; and the Masonic Lodges in Rapides Parish and West Feleciana Parish; and the international organized Freemasonry. Although Mr. Caldwell's motion sought an injunction against Balbina Caldwell, it did not state particular claims against the other individuals and entities he referenced as defendants.

The underlying assertions in Mr. Caldwell's Motion for Temporary Restraining Order have not, to the Tribunal's knowledge, ever been adjudicated. Rather, the United States District Court entered a *sua sponte* order dismissing those claims based on the fact that the case had been closed since 2012 and finding that that court lacked jurisdiction over the persons sought to be enjoined. Notably, in dismissing the case, the District Court did not make a finding that

---

[1] It appears that each appeared *pro se* in that action.

3

Mr. Caldwell's motion was frivolous or that his request had no hope of being successful in any court. Rather, the District Court commented, "Possibly Mr. Caldwell has State law claims which would be presented to a State, not a Federal Court."

Rule 3.1 of the Mississippi Rules of Professional Conduct provides, in relevant part, the following:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and in fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

M.R.P.C. 3.1. As the comments to such Rule illustrate, the purpose of the Rule is to prevent attorneys from abusing legal procedure. M.R.P.C. 3.1 cmt. The comments further define a frivolous action as being one "taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." M.R.P.C. 3.1 cmt.

For his part, Mr. Caldwell asserts that the filing was based upon a genuine concern for his safety. He further asserts that, in filing the motion, he was acting in a *pro se* rather than a representative capacity. Thus, Mr. Caldwell reasons, he should not be disciplined in connection with the filing even if it were deemed to be frivolous. In this regard, the Tribunal finds that Mr. Caldwell's arguments miss the mark. It would be a distortion of the Rules if a lawyer representing himself were allowed to commit an act that violates the Rules but were able to escape accountability for such violations solely because the lawyer was representing himself. *See Barrett v. Virginia State Bar ex rel. Second Dist. Committee*, Supreme Court of Virginia, 272 Va. 260634 S.E.2d 341 (2006), citing *Attorney Grievance Commission v. Alison*, 317 Md. 523, 565

4

A.2d 660, 668 (1989) (intent and purpose of Maryland's version of Rule 4.4 served only by applying construction that lawyer is representing client when he represents self); *Montgomery County Bar Ass'n v. Hecht*, 456 Pa. 13, 317 A.2d 597, 601–02 (1974) (anomalous to condemn lawyer's knowing participation in introduction of perjured testimony by client and condone giving such testimony by lawyer himself). Furthermore, an attorney who represents himself in a proceeding acts as both lawyer and client. *See In re Glass*, 309 Or. 218, 784 P.2d 1094, 1097 (1990) (lawyer appearing in proceeding *pro se* is own client); *In re Morton Allan Segall*, 117 Ill.2d 1, 109 Ill.Dec. 149, 509 N.E.2d 988, 990 (1987) ("attorney who is himself a party to the litigation represents himself when he contacts an opposing party"); *Pinsky v. Statewide Grievance Committee*, 216 Conn. 228, 578 A.2d 1075, 1079 (1990) (restriction on attorneys contacting represented parties limited to instances where attorney is representing client, not where attorney represents himself); ABA COMM. ON ETHICS & PRO. RESP., Formal Op. 22-502 (2022) ("[I]t is not possible for a pro se lawyer to 'take off the lawyer hat' and navigate around [the no-contact rule] by communicating solely as a client."); *Ruth v. Commission for Lawyer Discipline*, 696 S.W.3d 233, 239 (Tex.App.-San Antonio, 2024). Accordingly, the Tribunal turns to the question of whether Mr. Caldwell's filing in the Louisiana federal court can be deemed frivolous against the clear and convincing standard by which we are bound. We are not prepared to do so.

Mr. Caldwell's act of seeking a restraining order in a federal court case that had been dismissed nine (9) years earlier is certainly concerning, and Mr. Caldwell's filing appears to reflect either an ignorance of or a disregard for the Federal Civil Rules of Procedure and the concepts of personal and subject matter jurisdiction. Based upon the evidence presented,

5

however, the Tribunal cannot find by clear and convincing evidence that Mr. Caldwell's actions

equate to the filing of a frivolous or otherwise unmeritorious claim. In reaching this conclusion,

the Tribunal observes that the court in which those claims were filed made no finding that the

claims were frivolous, issued no reprimand or threat of sanction or censure to Mr. Caldwell for

filing the motion, and, as noted above, never passed on the merits of Mr. Caldwell's contention

that his wife had attempted to harm him. Accordingly, the Tribunal finds that the Bar has failed

to set forth facts upon which this Tribunal can find by clear and convincing evidence that Mr.

Caldwell violated Rule 3.1 of the Mississippi Rules of Professional Conduct by seeking a

restraining order in the Western District of Louisiana.[2]

2.    Rule 5.5(a) of the Mississippi Rules of Professional Conduct

The Bar further asserts a claim against Mr. Caldwell for violation of Rule 5.5(a) of the

Mississippi Rules of Professional Conduct by engaging in the practice of law in Louisiana. That

Rule states, "A lawyer shall not practice law in a jurisdiction where doing so violates the

regulation of the legal profession in that jurisdiction." M.R.C.P. 5.5(a).

It is uncontested that Mr. Caldwell was never licensed to practice law in the State of

Louisiana. Mr. Caldwell testified under oath that while he had intended to take the bar

examination in Louisiana, he never did so and, furthermore, never took steps to otherwise

become admitted to practice law in that State. Mr. Caldwell also admits that he never

associated with an attorney duly licensed to practice law in Louisiana. Thus, Mr. Caldwell can be

---

[2] Even if these actions were found to have violated Rule 3.1, the Tribunal would not have imposed additional discipline beyond that otherwise addressed herein, particularly in light of Mr. Caldwell's apparently sincerely held belief that he was under threat of physical harm.

found to have violated Rule 5.5(a) if the Bar demonstrates by clear and convincing evidence

that he improperly engaged in the practice of law in Louisiana.

As a predicate matter, we first look to see whether Louisiana prohibits the practice of

law within that state by non-licensed individuals. Unsurprisingly, it does. Louisiana law

provides:

> [N]o person licensed or qualified to practice as an attorney at law or as an
> attorney and counsellor at law in any other state and temporarily present in this
> state shall practice law in this state, unless he has been first duly licensed to
> practice law by the supreme court of this state or unless he acts in association
> with some attorney duly licensed to practice law by the supreme court of this
> state.

La. R. S. 37:214

Moreover, Louisiana specifically prohibits unlicensed persons from holding themselves

out as practicing law. As one example, Rule 5.5 of the Louisiana Rules of Professional Conduct

provides that "[a] lawyer who is not admitted to practice in this jurisdiction shall not . . . hold

out to the public or otherwise represent that the lawyer is admitted to practice law in this

jurisdiction." L.R.P.C. 5.5(b)(2).

Louisiana Revised Statutes § 37:213 additionally provides:

> No natural person, who has not first been duly and regularly licensed and
> admitted to practice law by the supreme court of this state . . . shall:
>
> (1) Practice law.
> (2) Furnish attorneys or counsel or an attorney and counsel to render legal
> services.
> (3) Hold himself or itself out to the public as being entitled to practice law.
> (4) Render or furnish legal services or advice.
> (5) Assume to be an attorney at law or counselor at law.
> (6) Assume, use, or advertise the title of lawyer, attorney, counselor, advocate
> or equivalent terms in any language, or any phrase containing any of these
> titles in such manner as to convey the impression that he is a practitioner of
> law.

(7) In any manner advertise that he, either alone or together with any other person, has, owns, conducts, or maintains an office of any kind for the practice of law.

La. R. S. 37:213(A).

With that predicate question answered, we examine whether Mr. Caldwell's actions constituted the practice of law in Louisiana, as defined by that State, or otherwise holding himself out as practicing law. In the State of Louisiana, the practice of law has been defined to include the following activities:

(i) holding oneself out as an attorney or lawyer authorized to practice law;

(ii) rendering legal consultation or advice to a client;

(iii) appearing on behalf of a client in any hearing or proceeding, or before any judicial officer, arbitrator, mediator, court, public agency, referee, magistrate, commissioner, hearing officer, or governmental body operating in any adjudicative capacity, including submission of pleadings, except as may otherwise be permitted by law;

...

(v) negotiating or transacting any matter for or on behalf of a client with third parties[.]

L.R.P.C. 5.5(a).

The practice of law has been further defined by statute as the following:

(1) In a representative capacity, the appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state; or

(2) For a consideration, reward, or pecuniary benefit, present or anticipated, direct or indirect;

(a) The advising or counseling of another as to secular law;
(b) In behalf of another, the drawing or procuring, or the assisting in the drawing or procuring of a paper, document, or instrument affecting or relating to secular rights;

8

      (c) The doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or the redress of a wrong or the enforcement or establishment of a right[.]

La. R. S. 37:212(A).

Mr. Caldwell clearly engaged in conduct that constitutes the practice of law and is therefore in violation of the applicable law. Mr. Caldwell admitted to gaining access to and meeting with an unnamed criminal defendant in a holding cell at the courthouse in Louisiana while the unnamed defendant was already represented by a public defender, to meeting with the defendant's public defender and the prosecuting attorney to discuss such defendant's case under the auspices of seeking *pro hac vice* status, and, further, to obtaining the defendant's court file, reviewing the file, meeting with the defendant and relaying information back and forth between the defendant, the Prosecutor and the defendant's attorney. Mr. Caldwell additionally admitted to discussing with the unnamed criminal defendant whether to take a plea agreement and, of his own volition, spoke to the judge in open court on such defendant's behalf relative to speedy trial issues during a court proceeding. Mr. Caldwell admits that he was ultimately asked to leave the courthouse and not return.

Additionally, on a separate occasion, while in Louisiana Mr. Caldwell was arrested for trespass. On October 29, 2021, and while in custody for such offense, Mr. Caldwell met a defendant by the name Rolando Williams who was in custody for a crime but also allegedly appeared to have been assaulted by law enforcement. Mr. Caldwell gave Mr. Williams his phone number while both were detained and, once released, met with Mr. Williams and discussed the filing of a tort claim. They also went together to open a bank account. Mr. Caldwell obtained a meeting with Judge David Williams and went to the Judge's Chambers to

9

meet with him on behalf of Mr. Williams. Caldwell admits that he told the Judge "his background" but does not recall telling the Judge he was licensed to practice law in Louisiana. Ultimately, a Deputy escorted Mr. Caldwell from the Judge's Chambers into the elevator. No tort action was ever filed. These actions, individually and taken together, reflect Mr. Caldwell's practice of law in Louisiana.[3]

Mr. Caldwell not only practiced law, he held himself out as doing so through the use of business cards that implied he was admitted to practice in Louisiana.[4] Mr. Caldwell admitted he had business cards made, that while in Louisiana he showed them to another attorney, gave one to a bailiff and maybe gave one to Judge Koch, who first expressed concerns to the Bar regarding Mr. Caldwell's conduct.[5] A copy of the business card in question was admitted as an Exhibit at the trial herein and displays the word "Esquire" after Mr. Caldwell's name, lists a physical Louisiana address corresponding to that of a Louisiana courthouse, which Mr. Caldwell testified was purposeful in that he got the idea from another attorney to meet clients there, provides multiple Louisiana phone numbers, touts a "100% win-rate . . . attorney", and,

---

[3] Mr. Caldwell testified that he was acting on behalf of a charitable organization and/or "wanted to practice pro hac vice." No proof was provided to establish any connection with a charitable organization, and the Tribunal finds that argument unpersuasive.

[4] Louisiana Revised Statutes § 37:223 further provides:

The following communications in attorney advertisements shall be prohibited:

(1)    Any advertisement for legal services, in any format, that utilizes a . . . motto . . . that states or implies an ability to obtain results in a matter.

(2)    Any advertisement for legal services, in any format, that promises results.

La. R. S. 37:223(E).

[5] It is presumed that Mr. Caldwell gave his business card to Judge Koch, as she included a copy of same in her correspondence to the Mississippi Bar.

beneath a scales of justice graphic, contains the language: "You want only the best lawyer." There is no disclaimer on the business card advising that Mr. Caldwell is not licensed to practice law in the State of Louisiana.[6]

The Tribunal finds by clear and convincing evidence that because Mr. Caldwell, while not being licensed to practice law in Louisiana, rendered legal consultation and advice to both the unnamed defendant and Mr. Williams, appeared on behalf of the unnamed defendant in a court proceeding and on behalf of Mr. Williams before a judicial officer, and transacted matters for or on behalf of both the unnamed defendant and Mr. Williams with third parties, Mr. Caldwell violated Rule 5.5 of the Louisiana Rules of Professional Conduct, Louisiana Revised Statutes §§ 37:212, 37:213 and 37:214, and Rule 5.5(a) of the Mississippi Rules of Professional Conduct.

The Tribunal further finds by clear and convincing evidence that, because Mr. Caldwell was neither a licensed attorney in Louisiana nor associated with any attorney admitted to practice in that State, his use of a business card with the words "Esquire," "lawyer," and "attorney," a Louisiana address, Louisiana phone numbers, and language stating, "You only want the best lawyer" and "100% win-rate" is a violation of Rule 5.5 of the Louisiana Rules of Professional Conduct, Louisiana Revised Statutes §§ 37:213, 37:214, and 37:223, and Rule 5.5(a) of the Mississippi Rules of Professional Conduct.

---

[6] In *Mississippi Bar v. Abioto*, 308 So. 3d 840 (Miss. 2020), disciplinary proceedings were instituted against an attorney who was adjudicated guilty of engaging in unprofessional and unethical conduct for which public censure was imposed by the Board of Professional Responsibility of the Supreme Court of the State of Tennessee. Among other violations, the attorney was found to have used a Memphis, Tennessee, business address on her cards and letterhead with no disclaimer that she was not licensed in Tennessee.

The Tribunal further finds that Rule 5.5(a) of the Mississippi Rules of Professional Conduct was violated in light of Mr. Caldwell's violation of the plain language of Louisiana Revised Statutes § 37:213(A), subsections (3), (4), (6), and (7) in that his business card combined with his actions at the courthouse and his appearance before (2) separate judicial officers pertaining to two (2) separate people indicate that he held himself out to the public as being entitled to practice law, advertised himself in a manner as to covey that impression, and advertised that he maintained an office in Louisiana.

### 3.    Rule 8.4(b) of the Mississippi Rules of Professional Conduct

The Bar additionally alleges professional misconduct by Mr. Caldwell for his behaviors relative to a woman he sought out on Facebook as well as a trespass arrest for conduct on the campus of Louisiana College.  The Tribunal will take each in turn.

In 2020, Mr. Caldwell's wife filed for divorce and, according to his testimony at trial, Mr. Caldwell "was the kind of person who needed to be married."  According to Mr. Caldwell, a friend told him that a young woman, Hannah Hosch, would be a good match for him since he was looking for a potential wife in the event his divorce was made final.  Mr. Caldwell found the Facebook page of Hannah Hosch, who was at the time approximately twenty-one (21) years old and approximately thirty (30) years younger than Mr. Caldwell. Pursuant to a letter offered as evidence at trial and written by Mr. Caldwell to Pastor Hosch (Hannah's father), Mr. Caldwell penned: "After a year and a half, I finally decided to go see Hannah for myself and so I drove a thousand miles to go to your church." Without invitation and having never communicated with Ms. Hosch, Caldwell moved from Mississippi to Louisiana to attend her church, ate dinner with her family (although, presumably, this was by invitation), and made concerning statements to

12

her father, all of which possibly led to both Ms. Hosch and her father obtaining separate

temporary restraining orders against Mr. Caldwell.[7]

      The Bar further alleges that Mr. Caldwell engaged in professional misconduct in a

separate incident unrelated to the Hosch family. On October 29, 2021, Mr. Caldwell was

arrested for the misdemeanor offense of Trespass as a result of his actions at the campus of

Louisiana College. Ultimately, there was no trial and he was placed on something akin to

nonadjudication or a delayed docket for the misdemeanor offense for the term of one (1) year.

After the expiration of the term, the matter was dismissed. The Bar makes no claim pertaining

to the Rules of Discipline for the Mississippi State Bar in regard to Rule 6. The sole claim

pertaining to the trespassing at the college campus is based on Rule 8.4(b) of the Mississippi

Rules of Professional Conduct.

      The Bar alleges that Mr. Caldwell's conduct in the Hosch matter and the criminal

trespass at Louisiana College constitutes professional misconduct as defined by Rule 8.4 of the

Mississippi Rules of Professional Conduct which reads, in relevant part,

> It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects
> adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other
> respects[.]"

M.R.P.C. 8.4(b).

      The Tribunal finds that the alleged criminal act would have to "reflect[] adversely on the

lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[,]" to constitute

professional misconduct under this Rule. To be sure, engaging in stalking behavior, if proven,

---

[7] There is no evidence that Mr. Caldwell was ever served in the two (2) Hosch TRO causes, was aware of the filing of the alleged protective order(s), or participated in the hearings or proceedings that led to the issuance of these alleged temporary restraining orders.

and criminal trespass would be criminal but, as the comments to the Rule make clear, "[a]lthough a lawyer is personally answerable to the entire criminal law, *a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category.*" M.R.P.C. 8.4 cmt (emphasis added).

Accordingly, given the parameters established by Rule 8.4 itself, namely that such criminal act "reflects adversely on the lawyer's honesty, trustworthiness or <u>fitness as a lawyer</u>" and the lack of evidence in that regard, we find such that charge of trespassing does not constitute professional misconduct as defined by Rule 8.4(b) of the Mississippi Rules of Professional Conduct. We further find that the allegations of inappropriate conduct towards Ms. Hosch, if true, may have been concerning, there has been no adjudication of those claims or criminal proceedings related to those claims, such that they do not rise to the level of demonstrating an unfitness to practice.

4.    <u>Rule 8.1(b) of the Mississippi Rules of Professional Conduct Analysis</u>

Rule 8.1(b) of the Mississippi Rules of Professional Conduct states that "a lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." M.R.P.C. 8.1(b).

In the case *sub judice*, Mr. Caldwell failed to respond to the Bar's Complaint, a failure the Bar claims was knowing on account of Mr. Caldwell's failure to keep his registration information, to include his address, current as required by Rule 1, Procedure 1.1(c), of the Rules of Discipline for the Mississippi State Bar. In other words, the Bar reasons that because Mr. Caldwell knowingly failed to maintain his registration information and, as a result, did not

14

receive the Complaint in question, his subsequent failure to respond was, by extension, also knowing.

While a compelling argument, the Bar's complaint fails to account for the fact that such knowing failure to respond must be as to "a lawful demand for information." In this regard, pursuant to the Rules of Discipline for the Mississippi State Bar, service of the Bar's Complaint must be done in accordance with the Mississippi Rules of Civil Procedure and, pursuant to Rule 4 of the Mississippi Rules of Civil Procedure, service of a complaint upon an individual is achieved via in person service, first-class mail, or, if such individual resides out-of-state, by certified mail, return receipt requested.

Absent a showing that Mr. Caldwell was properly served with a copy of the Complaint in accordance with Rule 4 of the Mississippi Rules of Civil Procedure, the Tribunal cannot find by clear and convincing evidence that a lawful demand for information was ever made upon Mr. Caldwell. Accordingly, there being no lawful demand for information, the Tribunal cannot find that Mr. Caldwell knowingly failed to so respond.

### Disciplinary Analysis

Having determined that Mr. Caldwell has violated the Mississippi Rules of Professional Conduct by engaging in the unauthorized practice of law in the State of Louisiana, the Complaint Tribunal must now determine the appropriate discipline to be imposed. In performing this function, the Tribunal is required to consider the nine factors outlined in *Liebling v. Mississippi Bar*, 929 So.2d 911, 918-920 (Miss. 2006), i.e., the nature of the misconduct involved, the need to deter similar conduct, preservation of dignity and reputation of the legal professional, protection of the public, sanctions imposed in similar cases, the duty

involved, the lawyer's mental state, actual or potential injury resulting from the misconduct, and the existence of aggravating or mitigating factors.[8] We turn to our analysis of these factors.

### 1.    Nature of the Misconduct Involved

The misconduct found by the Tribunal involves several instances of unauthorized practice of law in another jurisdiction. The Tribunal finds in this case that Mr. Caldwell's violations were serious both in nature and scope.

Mr. Caldwell, without a prior association with a law firm or attorney in Louisiana, met with a criminal defendant (and possible tort plaintiff), Rolando Williams, and at least one other unnamed criminal defendant in Louisiana, to provide assistance on their cases. He created business cards to advertise his services, with no disclaimer thereon stating that he was not licensed or otherwise authorized to practice law in Louisiana or that he was only licensed in Mississippi. There is no proof as to whether Mr. Caldwell provided a verbal disclaimer, but there is sufficient proof that he spoke with these individuals, discussed possible entry of a guilty plea with one defendant, made a statement in court on behalf of that same defendant, discussed a possible tort claim with another, and even met with a judge to discuss the case. Moreover, Mr. Caldwell sat in judgment of the attorneys actually assigned to represent at least one criminal defendant, even going so far as to state that they were not properly executing their duties.

This factor weighs in favor of the imposition of discipline.

---

[8] Within these criteria, the Court has used the American Bar Association Standards for Imposing Lawyer Sanction ("ABA Standards") which include: the duty involved; the lawyer's mental state; the actual or potential injury resulting from the misconduct; and the existence of aggravating or mitigating factors. *L.S. v. Miss. Bar*, 649 So.2d 810, 815 (Miss. 1997); *Goodsell v. Miss. Bar*, 667 So.2d 7 (Miss. 1996).

2.     <u>The Need to Deter Similar Misconduct</u>

The Tribunal finds that there is a great responsibility to deter the unauthorized practice of law to protect the public. The unauthorized practice of law, particularly in the context of providing representation or advice to criminal defendants, poses a grave threat to the integrity of the legal profession and the protection of the public. Conduct of this type can undermine the trust placed in the legal system and expose individuals to the risk of inadequate or improper representation. This is concerning in almost any situation, but it is especially true when, as here, the liberty of those persons was at stake. Criminal defendants rely on qualified legal counsel to navigate complex legal proceedings, protect their constitutional rights, and ensure a fair trial; the unauthorized practice of law jeopardizes these critical protections.

Because of the various statute of limitations issues, potential tort claims also deserve to be filed promptly. In Rolando Williams' case, no tort claim was filed based on the information presented to the Tribunal.

Deterrence of misconduct of this type is essential to safeguarding the fundamental rights of individuals who face potentially life-altering consequences. The legal profession is under much scrutiny in the public and those in need of legal advice need to be able to rely on those duly licensed attorneys to give sound advice. Holding oneself out as a "licensed attorney" without any disclaimer implies to the public that you are licensed to practice law in the jurisdiction where the claim is made. Intentional misrepresentations to the public (and the court) are dishonest and reflect poorly on the legal profession resulting in a lack of public confidence. "The purpose of attorney discipline is not only to punish the wrongdoer, but also to deter other members of the Bar from engaging in similar misconduct." *Mississippi Bar v.*

*Turnage, 919 So.2d 36, 40 (2005).* The need to deter similar conduct among the bar is significant.

This factor weighs in favor of the imposition of discipline.

3.    Preservation of Dignity and Reputation of the Legal Profession

The unauthorized practice of law not only endangers the interests of those directly affected but also undermines the dignity and reputation of the legal profession as a whole. The practice of law is a regulated profession that demands adherence to high ethical and competency standards to ensure the delivery of sound legal advice and representation. When individuals engage in legal practice without proper authorization, they erode public trust in the profession, cast doubt on the legitimacy of qualified practitioners, and diminish the standing of the legal community. This harm is particularly acute in the case at bar. There is a strong need to deter similar conduct. "[T]here is a strong need to rectify abuses in order to preserve the dignity and reputation of the profession." *Mississippi Bar v. Turnage,* 919 So.2d 36, 41 (2005).

This Tribunal agrees and finds that this factor weighs in favor of the discipline of Mr. Caldwell.

4.    Protection of the Public

As noted previously, the Tribunal finds that there is a great responsibility to protect the public from the unauthorized practice of law. The Mississippi Rules of Discipline mandate that protection and those in our community deserve to be able to rely on attorneys with whom they consult. For the reasons set forth previously, this factor also weighs in favor of the imposition of discipline.

5.    Sanctions Imposed in Similar Cases

The fact pattern in the case at bar is similar to the attorney's conduct in *Mississippi Bar v. Holmes,* 326 So. 3d 436 (Miss. 2021). In *Holmes,* the attorney met with a criminal defendant in jail, discussed his case with the Sheriff, filed an entry of appearance, attended the arraignment, received discovery, and communicated with the assistant district attorney, all under the auspices of eventually obtaining *pro hac vice* status, which was later denied. The attorney admitted to the violation of Rule 5.5(a) and Rule 8.4(b) of the Louisiana Rules of Professional Conduct and the Louisiana Supreme Court accepted the recommendation of a public reprimand. The Mississippi Supreme Court likewise found that this conduct warranted a public reprimand in Mississippi. In that case, the attorney at issue accepted responsibility for his actions and recognized that his conduct had been inappropriate. That admission and recognition of misconduct in Holmes is a stark difference to the conduct of Mr. Caldwell.

In addition, in *Mississippi Bar v. Abioto,* 308 So. 3d 840 (Miss. 2020) an attorney was disciplined through a suspension of one year for conduct, which though more significant and involving more aggravating factors than those present here, including the unauthorized practice of law.

This factor favors the imposition of discipline on Mr. Caldwell.

6.    The Duty Involved

The duty involved in this case is one of paramount importance, as it encompasses the ethical and professional obligations that are the heart of the legal profession. Attorneys have a fundamental duty to uphold the rule of law, protect the rights of their clients, and ensure that legal representation is conducted competently and ethically. By engaging in the unauthorized

practice of law, particularly in matters involving criminal defendants, these fundamental principles are exploited. The breach of this duty not only affects the individuals directly involved but also threatens the broader principles of fairness and accountability that the legal system is designed to uphold.

This factor also favors the imposition of discipline.

7.    The Lawyer's Mental State

Mr. Caldwell's mental state during the period in question serves as a mitigating factor in evaluating his violations of ethical rules. The actions by Mr. Caldwell that the Tribunal has found to violate the Mississippi Bar's ethical standards generally occurred within a concentrated four-month period. Mr. Caldwell testified, and the Tribunal accepts, that he was under considerable stress during this time, including a belief that there had been an attempt on his life. This state of mind was further compounded by a diagnosis of bipolar disorder, which may have impaired his judgment and decision-making during that time. While Mr. Caldwell's mental state does not excuse the misconduct, it provides context for understanding his actions.  Nevertheless, it is concerning that Mr. Caldwell does not take his own mental health diagnosis seriously and at the time of the hearing still took no responsibility for his mental health diagnosis or his actions.

This factor serves as mitigation against any discipline to be imposed.

8.    Actual or Potential Injury Resulting from the Misconduct

The Tribunal is not aware of any actual injury that resulted to the persons with whom Mr. Caldwell met, any persons who may have received his business cards, or any other members of the public as a result of Mr. Caldwell's unauthorized practice of law. The Tribunal finds that there was, however, a potential for great injury.

20

This factor weights slightly in favor of the imposition of discipline.

9.    Existence of Aggravating or Mitigating Factors

In assessing the appropriate response to Mr. Caldwell's conduct, the Tribunal finds that one aggravating factor and two mitigating factors must be considered. The aggravating factor is the lawyer's apparent lack of remorse for his actions, which undermines confidence in his acknowledgment of the severity of the violations and his commitment to rectifying the harm caused. Notably, Mr. Caldwell referred to himself as the "victim" on several occasions and was openly defiant of any suggestion by the Bar that he acted improperly.

The aggravating factor of a lack of an acceptance of responsibility is balanced by two significant mitigating factors. First, Mr. Caldwell has no prior disciplinary record, indicating that this misconduct during a four (4) month period may not be part of a broader pattern. Second, his compromised mental state during the period in question, coupled with a bipolar disorder diagnosis, provides crucial context for understanding his behavior.  Nevertheless, the Tribunal finds that Mr. Caldwell at no point in the trial appeared to recognize the gravity of the allegations (and the proof) against him and he showed little if any remorse.  He exhibited a flagrant disregard for the Rules of Discipline.

**Finding**

The Tribunal finds that a suspension of ninety (90) days is appropriate for Mr. Caldwell's conduct. The Tribunal also finds the Bar's costs and expenses should be assessed against Mr. Caldwell. The Bar incurred costs and expenses in the amount of thirty dollars ($30.00), as pled in the Formal Complaint, to investigate the informal complaint that preceded the filing of this action. The Bar also incurred costs and expenses to prosecute this Formal Complaint in the

amount of three hundred eighty-seven dollars and thirty cents ($387.30). All sums are payable

to the Bar within thirty (30) days of the entry of this Order. Payment of such fees is a precedent

to Mr. Caldwell being reinstated to practice law.

### JUDGMENT

THEREFORE, the Tribunal finds that WILLIAM CLAY CALDWELL should be and is hereby

SUSPENDED for a period of ninety (90) days beginning seven (7) days from the entry of this

order.

Pursuant to Rule 8 of the Rules of Discipline for the Mississippi State Bar, the Clerk of

the Mississippi Supreme Court shall immediately forward an attested copy of this Order to the

judges of the Circuit, Chancery, and County Courts of Harrison County, Mississippi, with

instructions to the senior judges of each of these courts to include a copy in the minutes of

each respective Court.

Additionally, the Clerk of the Supreme Court shall forward copies of this Order to each

member of the Tribunal; to counsel for all parties; to the Executive Director of the Mississippi

Bar; to the Clerks of the United States District Courts for the Northern and Southern Districts of

Mississippi; to the Clerk of the United States Court of Appeals for the Fifth Circuit; and to the

Clerk of the United States Supreme Court.

The Tribunal hereby enjoins Mr. Caldwell from practicing law in the State of Mississippi;

from holding himself out as an attorney at law; from performing any legal services for others;

from directly or indirectly accepting any fee for legal services; from appearing in any

representative capacity in any legal proceeding or Court of the State of Mississippi; from

Mr. Caldwell shall notify each of his clients in writing of his suspension, inform each client of his consequent inability to act as an attorney, and advise each client to promptly substitute another attorney or seek legal advice elsewhere. At the request of any client, Mr. Caldwell shall promptly return all files, papers, money, or other property in his possession belonging to his clients.

The Tribunal further orders Mr. Caldwell to file an affidavit with the Clerk of the Supreme Court of Mississippi stating that he has notified in writing all clients of his suspension and his consequent inability to act as an attorney. The affidavit shall further state that he returned all files, papers, money, or other property in his possession belonging to clients requesting the same consistent with this Order. In the event he was unable to notify such clients or return their files, papers, money, or other property, he shall state that due diligence was used to do so. Mr. Caldwell shall submit such affidavit within thirty (30) days of the date of this Order and send a copy of the affidavit to The Mississippi Bar. The submission of this affidavit is a condition precedent to Mr. Caldwell being reinstated to the practice of law.

Mr. Caldwell shall notify all courts, agencies, and adverse parties or their respective attorneys in any proceeding in which he is involved of his suspension and for his consequent inability to act as an attorney.  Mr. Caldwell shall submit an affidavit to that effect with the Clerk of the Supreme Court of Mississippi within thirty (30) days of this Order and send a copy of such affidavit to The Mississippi Bar. The submission of this affidavit is a condition precedent to Mr. Caldwell being reinstated to the practice of law.

When this Order is filed with the Clerk, it shall become a matter of public record, and the contents of Cause No. 2024-B-00203 shall likewise in all respects be a public record.

23

This Order shall remain in full force and effective until further Order of the Supreme Court of Mississippi.

The violation of any term of this Order may be considered as contempt of the Tribunal.

Each member of the Tribunal concurs in this Judgment.

So Ordered this the 27 day of January, 2024.

_____
Honorable Celeste E. Wilson
Presiding Judge for the Tribunal